UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL POLICE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. A. No. 22-1724 (CJN) |
| DEPARTMENT OF HOMELAND SECURITY et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO
ESTABLISH RECORD PRODUCTION COMPLETION DATE**

Defendants, Department of Homeland Security ("DHS") and Customs and Border Protection ("CBP"), by and through undersigned counsel, oppose Plaintiff National Police Association, Inc.'s (the "Police Association") Motion to Establish Record Production Completion Date (ECF No. 11). Plaintiff seeks "an order establishing record production completion date" against "Defendant" with respect to "29 pages [that] remain to be processed." ECF No. 11 (Motion), 11-1 (Proposed Order). Those 29 pages identified by DHS are pending interagency consultation, and Plaintiff fails to articulate any argument for circumventing the consultation process. Further, to the extent Plaintiff takes issue with CBP's processing, there is no ripe issue before the Court.

I.      **DHS Response to FOIA Request**

Plaintiff's Motion regularly misstates the facts, confusing DHS and CBP.[1]  It is DHS headquarters that has completed a search, identified 29 potentially responsive pages, and

_____

[1]      For example, on the very first page of its supporting Memorandum, Plaintiff states: "Defendant DHS has estimated that Defendant DHS has completed searching for and releasing all responsive and non-exempt records and Defendant CBP estimates that there are only 29 pages of

forwarded pages for interagency consultation.  Specifically, DHS has initiated a consultation request with the White House Counsel's Office.  Declaration of Catrina M. Pavlik-Keenan (Pavlik-Keenan Decl.")  ¶¶ 4, 6.  The consultation request is in accordance with DHS regulations, which provide that when the agency "determines that it maintains responsive records that either originated with another component or agency, or which contains information provided by, or of substantial interest to, another component or agency, then . . . [t]he component may respond to the request, after consulting with the component or the agency that originated or has a substantial interest in the records involved."  *Id*. ¶ 5 (citing 6 C.F.R. §5.4(d)).

Plaintiff's Motion quotes previous Joint Status Reports wherein DHS reports that it sent the records for interagency consultation.  *See* Mem. at 2.  Unfortunately, in preparing its response to the instant Motion, DHS determined that its reports were not fully accurate.  While DHS did identify information in the identified 29 pages as requiring White House consultation, due to an administrative error that request had not been transmitted to the White House as planned.  Pavlik-Keenan Decl. ¶ 6.  As of March 30, 2023, that error has been corrected and the consultation request transmitted.  *Id*.  Further, DHS has determined that it can release 11 pages within the identified 29 pages by April 12.  *Id*. ¶ 7.

Although this administrative error has delayed the completion of DHS's response to Plaintiff's FOIA request, it still would not be appropriate to issue "an order establishing record production completion date" because of the pending consultation.  The Police Association's Motion never acknowledges the role of interagency consultations.  Indeed, Plaintiff devotes pages upon pages to arguments and case law about timely processing by agencies subject to FOIA requests and agency processing rates that are wholly inapposite to the present situation.  The issue

---

records for Defendant CBP to process."  Mem. (ECF No. 11-13) at 1; *see also id*. at 31 (having a "fixed date to provide 29 pages of records will help CBP to fulfill its duties").

plainly is not whether DHS is processing Plaintiff's FOIA fast enough—it is when will the consultation process with an entity not before this Court and not controlled by DHS be completed so that DHS can finalize its response.

"FOIA explicitly permits 'consultation . . . with another agency having a substantial interest in the determination of the request.'" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007) (quoting 5 U.S.C. 552(a)(6)(B)(iii)(III)). Consultations ensure that equities of other agencies are protected and that records are properly handled. Further, it is well understood that interagency referrals and consultations will likely have the effect of delaying a final response. In fact, Congress expressly allowed for that in the original FOIA statute. The "need for consultation . . . with another agency having a substantial interest" in the request and responsive records is one of three statutory circumstances where agencies can extend time to respond. 5 U.S.C. 552(a)(6)(B)(iii)(III).

Instructive is *National Public Radio, Inc. v. Department of Treasury*, Civ. A. No. 19-0017 (JDB), 2021 WL 1850696, at *1 (D.D.C. Mar. 31, 2021), where a requester grew tired of how long consultations were taking and moved to compel the Treasury Department to produce records notwithstanding the agency's outstanding interagency consultation requests. The Court, "sensitive to the countervailing interests at stake which may require input from agencies outside Treasury," rejected NPR's motion. *Id*. at *2. Notably, the FOIA requests and consultations in *NPR* had been pending much longer than those in the instant case.

In sum, because Plaintiff fails to articulate a legal basis for bypassing the consultation process, there is not a legal basis for "an order establishing record production completion date."

**II.    CBP Response to FOIA Request**

Because CBP is interwoven throughout Plaintiff's Motion (often mistaken for DHS), CBP briefly responds to make clear that there is presently no basis to order a "production completion date" with respect to it.

First, despite all the statements about CBP in the papers supporting the Motion, Plaintiff's Motion and Proposed Order seek relief from DHS only. *See* ECF No. 11 (Motion), 11-1 (Proposed Order).  Therefore, Plaintiff has not clearly articulated relief that it seeks from the Court regarding CBP.

Second, as stated in the Joint Status Reports, CBP "conducted a search that retrieved approximately 520 pages of potentially responsive records" and "CBP produced all releasable documents to Plaintiffs on September 12, 2022."  ECF Nos. 6, 9, 10.  CBP also found 29 videos, *id*., which were the only other records pending release.  On February 18, 2023, Plaintiff informed Government counsel that it did not seek release of the videos.  *See* Hutchinson Decl. ¶ 9, Ex. 4 (ECF No. 11-2).  Thus, the issue is not whether CBP is releasing records quickly enough because CBP informed Plaintiff that it had completed its search.

Third, it became evident during pre-motion meet and confer conversations that Plaintiff was concerned that another FOIA requester (the Heritage Foundation) was receiving records that it was not obtaining.  Plaintiff referenced this in the last Joint Status Report, noting that "another Plaintiff with a [FOIA] case is obtaining records, similar to those requested by Plaintiff" and that it believed "Defendant appears to be releasing records to other parties ahead of releasing to Plaintiff."  Joint Status Report (ECF No. 10).  It is true that the Heritage Foundation submitted its own FOIA request on the events of September 19, 2021, in Del Rio, TX.  Declaration of Patrick Howard ("Howard Decl.") ¶¶ 2-3.  However, that FOIA is broader than the Police Association's

4

FOIA request and Heritage Foundation negotiated with CBP to conduct a supplemental search for records, which the Police Association never did. *See id*. ¶ 6. Thus, CBP was not "releasing records to other parties ahead of releasing them to Plaintiff," rather, CBP was releasing records in response to a broader request and a supplemental search conducted in that other case.

Nonetheless, given the overlap in subject matter and the fact that CBP would be releasing documents to Heritage Foundation, on March 1, 2023, CBP explained to Plaintiff's counsel that it is "willing to provide the Police Association copies of the records it produces to the Heritage Foundation" and asked "if CBP should start releasing those records to NPA." Exhibit 1. Inexplicably, Plaintiff has never responded to this offer. Instead, five days later, on March 6, Plaintiff brought the instant Motion that never mentions CBP's offer.

To date, CBP has produced 371 pages of records, redacted as appropriate, responsive to Heritage Foundation's FOIA request and the supplemental search negotiated with Heritage Foundation. Howard Decl. ¶ 9. Unless the Police Association provides written notification to Government Counsel that it does not want these records, CBP plans to release already-produced records to the Police Association by April 17, 2023. *See id*. ¶ 11. Likewise, unless informed otherwise by the Police Association, CBP will continue releasing records to NPA at approximately the same time it releases them to Heritage Foundation. *Id*. For the Heritage Foundation FOIA, CBP is processing potentially responsive records at a rate of 500 pages per month, prioritizing parent emails in its review, and making monthly releases of responsive, non-exempt records. *Id*. ¶ 8. CBP estimates that it has 2,738 pages of potentially responsive parent records to process. *Id*. ¶ 10. Even though the Police Association has failed to respond to CBP's offer of documents from the partially overlapping Heritage Foundation FOIA, CBP anticipates that the Police Association will accept these additional documents.

Thus, there is no ripe dispute presented by the Police Association and judicial intervention is not necessary with respect to CBP.

*    *    *

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Dated:  March 30, 2023                   Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

/s/ Sean M. Tepe
SEAN M. TEPE, DC Bar #1001323
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-2533
Email: sean.tepe@usdoj.gov
*Counsel for the United States*

# Exhibit 1

| From: | Tepe, Sean (USADC) |
|---|---|
| To: | Peter Sorenson |
| Subject: | RE: [EXTERNAL] National Police Association v. Department of Health and Human Services, Case No. 22-1724-CJN - draft email to court |
| Date: | Wednesday, March 1, 2023 9:32:00 AM |

Pete,

With respect to the DHS HQ records, those records are pending consultation with a non-DHS agency or entity. The FOIA explicitly contemplates such consultations and that they may extend the time for processing potentially responsive records. *See* 5 U.S.C. § 552(a)(6)(B)(iii). DHS does not control how long it takes to get consultations back, but I have asked my DHS contact to see if the process can be sped up. That said, a few months of a pending consultation is not out of the norm in my personal experience. If, despite the foregoing, NPA wishes to contact chambers to set up a telephonic conference call with the Court to discuss the speed of the consultations process, that is NPA's right. DHS will disagree that there is anything ripe for the Court's intervention under the circumstances.

With respect to CBP, the agency is willing to provide NPA copies of the records it produces to the Heritage Foundation. Because CBP conducted a supplemental search in response the Heritage Foundation FOIA request and because that FOIA request is broader than NPA's FOIA request, NPA would receive more records than it otherwise would. Please let me know if CBP should start releasing those records to NPA.

Sean

---

**From:** Peter Sorenson <peter@sorensonfoialaw.com>
**Sent:** Tuesday, February 28, 2023 1:43 PM
**To:** Tepe, Sean (USADC) <STepe@usa.doj.gov>
**Subject:** [EXTERNAL] National Police Association v. Department of Health and Human Services, Case No. 22-1724-CJN - draft email to court

yes, we want to get those records. the government has twice reported over four months that they are consulting with other agencies and has not released any further records.

after we get those records, we want to set a briefing schedule on the adequacy of search and application of exemptions -- on all records within the control of both Defendants.

to be clear: if we do not get a timely response to our email, sent friday, we will move forward with our motion.

On Tue, Feb 28, 2023 at 10:33 AM Tepe, Sean (USADC) <Sean.Tepe@usdoj.gov> wrote:

> If I understand the below correctly, NPA wants to bring to the Court's attention only its concerns with the failure of DHS to release 29 pages that are pending inter-agency consultations. Is that right?